UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ALLIED METAL COMPANY, CORP., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 21 C 1629 |
| | ) | |
| ELKEM MATERIALS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Before the Court is Defendant Elkem Materials, Inc.'s ("Elkem") Motion to Dismiss Count II of Plaintiff Allied Metal Company, Corp.'s ("Allied") Amended Complaint. For the following reasons, Elkem's motion is denied.

### BACKGROUND

For the purposes of this motion, the Court accepts as true the following facts from the Amended Complaint. *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013). All reasonable inferences are drawn in Allied's favor. *League of Women Voters of Chi. v. City of Chi.*, 757 F.3d 722, 724 (7th Cir. 2014).

Elkem is a supplier of chemical materials, including Silicon alloy products. Dkt. # 50, ¶ 4. Allied is a family-owned company that operates an aluminum smelter and zinc alloyer. *Id.*, ¶ 3. Allied and Elkem entered into Purchase Order # 422 ("PO422") on October 29, 2019, under which Elkem was to provide 110 truckloads of SiLLOY

1

170, a silicon alloy, to Allied at the prices set forth therein and pursuant to the applicable terms and conditions, as well as the parties' course of dealing. *Id.*, ¶ 7. Prior to PO422, Elkem supplied SiLLOY 170 to Allied under Purchase Order # 117 ("PO117"), which was entered into on February 4, 2019, and which provided for Elkem to supply 72 truckloads of SiLLOY 170 for delivery from July to December 2019. *Id.*, ¶¶ 8–9. Consistent with the parties' course of dealing and course of performance, when Allied was "long" (*i.e.*, when Allied had excess supply of SiLLOY 170), Elkem would delay the delivery of truckloads within the specified delivery time frame provided in PO117, for example delivering the May shipments in June. *Id.*, ¶¶ 10–11.

As Elkem continued delivering truckloads pursuant to PO117, Joel Fink, President and CEO of Allied, and Richard Wolf, Elkem's Sales Manage for Silicon, negotiated PO422. *Id.*, ¶¶ 11, 13. The stated delivery time frame for 110 truckloads of SiLLOY 170 under PO422 was between February and December of 2020. *Id.*, ¶ 13. Wolf included a provision in PO422 that the truckloads of SiLLOY 170 would be delivered by January 31, 2021, but expressly assured Fink that Elkem would act consistently with the prior practice of the parties with respect to the delay of shipments when Allied had an excess supply of product on hand. *Id.*, ¶ 14. As a reflection of this, Wolf included a provision that "Elkem will be willing to negotiate a short extension if needed." *Id.*, ¶ 15. Consistent with the course of performance under PO117, Allied received the February 2020 material under PO422 in June 2020, the March 2020 material in July 2020, the April 2020 material in September/October 2020, the May

2

2020 material in November 2020, the June 2020 material in December 2020, the July 2020 material in January/February 2021, and a portion of the August 2020 material in March 2021. *Id*., ¶ 16.

On September 18, 2020, Fink and Wolf spoke about the fulfillment of PO422. *Id*., ¶ 21. In an internal email summarizing this conversation, Wolf stated that Fink "was happy to hear that we [Elkem] will be rolling over the existing agreement [PO422] until it's fulfilled." *Id*.

On or before November 2020, Elkem became aware that its inventory of SiLLOY 170 would be insufficient to fulfill the remaining truckloads outstanding under PO422. *Id.*, ¶ 24. Though PO422 provided that Allied would be provided roughly 2400 metric tons of SiLLOY 170, as of November 2020, Elkem only had 1400 metric tons of inventory. *Id.*, ¶ 25. By December 2020, Elkem only had 813 metric tons of SiLLOY 170 inventory and by January 2021, Elkem only had 220 metric tons of SiLLOY 170 inventory. *Id.*

Despite knowing that it would be impossible for Elkem to fulfill orders for all remaining truckloads of SiLLOY 170 to Allied under PO422, no one from Elkem ever informed anyone at Allied of this fact. *Id*., ¶ 26. Rather, Elkem continued to deliver SiLLOY 170 under PO422 pursuant to the parties' regular course of performance. *Id.*, ¶ 27. Furthermore, Wolf never provided any indication to anyone at Allied that, unless Allied took all of the truckloads remaining under PO422 by January 31, 2021, Elkem

3

would consider PO422 complete and ship no further truckloads of SiLLOY 170. *Id.*, ¶ 23.

On February 26, 2021, in an internal email, Wolf noted that after Elkem's next shipment of SiLLOY 170 to Allied, Elkem's SiLLOY 170 inventory would be wiped out. *Id.*, ¶ 28. Elkem then unilaterally determined that it would not fulfill the remaining loads of SiLLOY 170 under PO422, but would instead seek to "convert" Allied to SiLLOY 130, a higher-priced product with a different iron/silicon composition. *Id.*

It was not until March 1, 2021, when, without warning and in breach of PO422, Wolf informed Fink that Elkem would not continue to deliver the remaining truckloads that it was obligated to provide. *Id.*, ¶ 29. In response, Fink replied to Wolf that Allied was ready, willing, and able to accept all of the remaining loads on PO422. *Id.*, ¶ 30. Wolf did not respond to this email and Elkem did not ship the remaining truckloads of SiLLOY 170 pursuant to PO422. *Id.* On March 11, 2021, Wolf stated in an email to Fink that Elkem had made the decision to "move on" after delivering in January and February. *Id.*, ¶ 31.

As a result of Elkem's actions, Allied has been forced to purchase silicon from alternative suppliers at substantially higher prices than provided for in PO422. *Id.*, ¶ 32.

Allied filed a two-count Amended Complaint alleging breach of contract (Count I) and fraudulent concealment (Count II) against Elkem. Elkem moves to dismiss Count II with prejudice for failure to state a claim, arguing that Allied's

4

fraudulent concealment claim is deficient because Elkem did not have a duty to disclose Elkem's inventory issues or the possibility that PO422 would not be honored.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.,* 694 F.3d 873, 878 (7th Cir. 2012). The Court accepts as true well-pled facts in the complaint and draws all reasonable inferences in favor of the plaintiff. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). The allegations in the complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A plaintiff need not provide detailed factual allegations, but it must provide enough factual support to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The claim must be described "in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a Rule 12(b)(6) motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible if the complaint contains sufficient alleged facts that allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

When claiming fraud, a party "must state with particularity the circumstances constituting fraud []. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The requirement that fraud be pled with particularity "ensures that plaintiffs do their homework before filing suit and protects defendants from baseless suits that tarnish reputations." *Pirelli Armstrong Tire Corp. Retiree Med. Ben Trust v. Walgreen Co.*, 631 F.3d 436, 439 (7th Cir. 2011). This requirement is not rigid, and what must be alleged will vary depending on the facts of the case. *Id*. at 442. The heightened pleading standard applies to all allegations of fraud (such as misrepresentation), not merely claims labeled fraud. *Id*. at 447.

## DISCUSSION

Elkem moves to dismiss Count II of Allied's Amended Complaint with prejudice on the ground that Allied failed to allege the duty to disclose required to sustain a fraudulent concealment claim.[1] The Court finds that Allied sufficiently alleged Elkem's duty to disclose information to Allied, and therefore denies Elkem's motion.

To state a fraudulent concealment claim under Illinois law, Allied must allege:

> (1) the concealment of a material fact; (2) that the concealment was intended to induce a false belief, under circumstances creating a duty to speak; (3) that the innocent party could not have discovered the truth through a reasonable inquiry or inspection, or was prevented from making a reasonable inquiry or inspection, and relied upon the silence as a representation that the fact did not exist; (4) that the concealed information was such that the injured party would have acted differently had he been

---

[1] We note that although Count II is titled "Fraudulent Misrepresentation/Fraudulent Concealment" in the Amended Complaint, Allied concedes it is not pursuing a fraudulent misrepresentation claim. The Court's analysis therefore focuses on the claim of fraudulent concealment. *See* Fed. R. Civ. P. 8(e).

6

aware of it; and (5) that reliance by the person from whom the fact was concealed led to his injury.

*See Trs. of the AFTRA Health Fund v. Biondi*, 303 F.3d 765, 777 (7th Cir. 2002).

The only element of Allied's fraudulent concealment claim that Elkem attacks, and thus the only element the Court addresses, is the second element. Elkem argues that it did not have a duty to inform Allied that Elkem would be unable to fulfill its obligations under PO422.

In order for Allied's fraudulent concealment claim to survive a motion to dismiss, Allied must allege that Elkem had a duty to speak. *Coca-Cola Co. Foods Div. v. Olmarc Packaging Co.*, 620 F. Supp. 966, 973 (N.D. Ill. 1985). Such a duty arises in two circumstances: (1) when the defendant's acts contribute to the plaintiff's misapprehension of a material fact and the defendant intentionally fails to correct plaintiff's misapprehension, or (2) when the defendant owes some fiduciary duty to the plaintiff to make full and fair disclosure and fails to correct a misapprehension of a material fact. *Id*.

Elkem first contends that Allied does not allege a "confidential, fiduciary, or special relationship giving rise to a duty to speak" because the parties were in a "contractual vendor-vendee relationship." Dkt. # 52, at 6–7. Allied correctly points out in response that it need not do so, because the duty to speak can also arise if a defendant's actions contribute to the plaintiff's misapprehension of a material fact.

7

Allied argues that Elkem had a duty to inform Allied of the inventory issues because Elkem's actions contributed to Allied's belief that PO422 would be fulfilled and, once Elkem knew that fulfillment of PO422 would not be possible, it failed to correct Allied's misapprehension. Specifically, Allied alleges that on September 18, 2020, Wolf told Allied that Elkem would be "rolling over the existing agreement until it's fulfilled." Furthermore, it was the parties' practice or regular course of performance for Elkem to delay its monthly deliveries when needed, and therefore the parties were operating on a delayed delivery schedule. *See* Dkt. # 50, ¶ 16. Elkem made its deliveries, as expected and with no issue, until March 2021.

As of November 2020, however, Elkem knew that it did not have sufficient supply of SiLLOY 170 to fulfill its obligation to Allied. Elkem never informed Allied of this change in circumstances. Instead, Elkem continued its monthly deliveries under PO422 as usual until March 2021, when Elkem suddenly told Allied that it would not deliver the remaining truckloads of SiLLOY 170 pursuant to PO422.

The Court finds these allegations sufficient to state Elkem's duty to disclose the material fact of its diminished inventory and ability to perform its obligations under PO422. Elkem's statement that it would fulfill PO422, coupled with its past course of performance and its continued monthly deliveries through March 2021, contributed to Allied's belief that PO422 would be completed without issue. Elkem therefore plausibly had a duty to disclose its dwindling inventory and/or that Elkem would be

unable to complete its deliveries under PO422. *See Coca-Cola*, 620 F. Supp. at 973–74.

Elkem includes a number of counterarguments in its reply, all based on the premise that Elkem told Allied it would be "rolling over" PO422 in September 2020, but did not learn of its inventory problems until November 2020, and therefore the September statement was one of "future conduct." Elkem makes three arguments: (1) "Allied relies on case law involving omissions of <u>existing</u> fact, which are neither instructive nor applicable to this case"; (2) Allied's claim fails because it is "premised on an alleged promise of future conduct"; and (3) Allied has failed to allege a "scheme to defraud." Dkt. # 60, at 2–6 (emphasis in original). The Court rejects all three of Elkem's arguments.

Elkem first asserts that Allied relies on inapplicable cases. Elkem argues that, in *Coca-Cola*, the defendants' motion to dismiss was denied because it allegedly failed to inform the plaintiff of certain *existing* facts that were material to the terms of the parties' agreement. Elkem makes a similar argument as to *Tibor Mach. Prod., Inc. v. Freudenberg-Nok Gen. P'ship*, 1996 WL 535338, at *5 (N.D. Ill. 1996) ("*Tibor II*"). But neither of those opinions indicate that an "existing fact" was required or in any way relevant to the analysis. Indeed, other courts in this district have found that when a defendant later learns that a plaintiff is operating under a misapprehension of fact that it created, a duty to correct arises. *See Soranno v. New York Ins. Co.*, 2000 WL 748142, at *9–10 (N.D. Ill. 2000). We agree with that approach. Elkem seems to confuse a

9

fraudulent misrepresentation claim, which does require a false statement of fact, s*ee Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 496 (1996), with a fraudulent concealment claim, which does not, *see Trs. of the AFTRA Health*, 303 F.3d at 777.

For the reasons stated above, we also reject Elkem's argument that Allied's claim fails because it is "premised on an alleged promise of future conduct." Elkem cites *Tibor Mach. Prod., Inc. v. Freudenberg-Nok Gen. P'ship* (an opinion that preceded *Tibor II* relied on by Allied) to argue that because Wolf told Allied it would be "rolling over" PO422 in September 2020, and allegedly did not learn of its SiLLOY 170 inventory problem until November 2020, it was not an "existing fact" that Elkem could have disclosed at the time and therefore Elkem did not have a duty to disclose it later. 1996 WL 99896, at *5 (N.D. Ill. 1996) ("*Tibor I*") ("Although there is an element of existing fact in [the counter-plaintiff's] case, there is also an element of future conduct which precludes us from finding that [the counter-defendant's] omissions amounted to fraudulent misrepresentations.").

We reject this argument and do not find *Tibor I* instructive for two reasons: (1) Allied's claim is not based solely on Wolf's September 2020 statement and (2) we disagree that, for a fraudulent concealment claim, the defendant's action or statement giving rise to its duty to disclose must coexist with the fact that makes the prior action or statement false.

As to the first point, Allied alleges its belief that Elkem would fulfill PO422 was based not only on Wolf's statement, but on the parties' past performance, course of

10

business, and the fact that Elkem continued to deliver truckloads of SiLLOY 170, as agreed and without issue, until March 2021. Partial performance can create the duty to disclose or correct a misapprehension of fact. *See Am. Hardware Mfrs. Ass'n v. Reed Elsevier, Inc.*, 2004 WL 3363844, at *13 (N.D. Ill. 2004). Elkem's duty stemmed not only from the September 2020 statement but also from its actions before and after that statement, including after November 2020.

As to the second point, a defendant may have a duty to correct a misapprehension of fact whether they always knew of the misapprehension or learned of it later. In *Soranno*, the plaintiffs alleged that the defendant company engaged in fraudulent concealment when it failed to inform them of its agent's misconduct upon learning of it. 2000 WL 748142, at *9–10. The defendant company argued the plaintiffs had not established a duty to disclose, but the court found the plaintiffs sufficiently alleged such a duty because the defendant company's acts contributed to the plaintiffs' misapprehension of a material fact. *Id*. The court stated:

> Freitag was [the defendant company's] agent. Freitag then sent out false account statements, which materially misrepresented the status of plaintiffs' accounts. Once [the defendant company] became aware of this conduct they fired Freitag but never informed plaintiffs of Freitag's conduct. Plaintiffs have alleged that even after Freitag was disciplined by the Illinois Department of Insurance and NASD, and lost his license to sell securities[,] he apparently continued to do so at [the defendant company]. These facts bring into question the involvement of [the defendant company] once Freitag was disciplined and once [the defendant company] discovered irregularities in its customers['] accounts. Whether these acts contributed to plaintiffs' misapprehension of a material fact as to Freitag's character and ability to handle their investments must be decided after the facts are developed. These allegations, however, set forth the elements

11

> necessary to establish a duty to disclose, and plaintiffs have sufficiently alleged a claim for fraud by omission.

*Id*. at *10. Even though the defendant company was originally unaware of its agent's behavior, it had a duty to disclose the agent's misconduct to the plaintiffs upon learning about it.

Although the *Tibor I* court may have ruled differently, we agree with the *Soranno* court's reasoning and apply it here. Allied has plausibly alleged that Elkem had a duty to disclose the change in circumstance as to its SiLLOY 170 inventory and its ability to perform its obligations under PO422 when Elkem learned of it.

And though we recognize Elkem was responding to Allied's brief, Elkem's argument that Allied has not alleged a "scheme to defraud" is irrelevant, since a "scheme to defraud" goes to whether a "promise of future conduct" is actionable for purposes of a promissory fraud claim, which is not alleged here. *See Bower v. Jones*, 978 F.2d 1004, 1011 (7th Cir. 1992).

At the motion to dismiss stage, we are required to make all reasonable inferences in Allied's favor. We therefore believe that Allied sufficiently pleads that Elkem had a duty to inform Allied of its diminishing SiLLOY 170 inventory and inability to complete PO422.

For the foregoing reasons, Elkem's motion to dismiss Allied's fraudulent concealment claim is denied.

## **CONCLUSION**

The Court denies Elkem's Motion to Dismiss (Dkt. # 52). It is so ordered.

Dated: 10/28/2022

Charles P. Kocoras
United States District Judge

13